# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### August 5, 2002 Session

## WENDY DIANE LAYNE (NOW HASTINGS) v. MARK ANTHONY LAYNE

### Appeal from the Circuit Court for Marion County
### No. 12138    Thomas W. Graham, Judge

---

### No. M2002-00670-COA-R3-CV - Filed January 28, 2003

---

The divorced parents of a fourteen-year-old girl asked the trial court to sign an agreed order to enable her to live with her grandmother so she could attend school in Hamilton County. The trial judge refused to sign the order. While the decision to sign or not to sign such an order is within the sound discretion of the trial court, the court in this case erroneously believed that it lacked jurisdiction over the matter because the parties had not shown a change of circumstances since the prior decree. We find that the proof does show a change of circumstances and that the best interests of the child require the entry of the proposed order. Therefore we reverse.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Reversed and Remanded

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and JOHN H. GASAWAY, III, SP. J., joined.

H. Graham Swafford, Jr., Jasper, Tennessee, for the appellant, Wendy Diane Layne (now Hastings).

## OPINION

### I. AN AMICABLE DIVORCE

On February 4, 1997, the Circuit Court of Marion County granted Wendy Diane Layne a divorce from her husband, Mark Anthony Layne. The divorce seems to have been fairly amicable, since the same attorney apparently represented both parties. Custody of the parties' two daughters was granted to the mother, and the father was ordered to pay child support. After the divorce, the mother remarried, and found a job in Chattanooga with Blue Cross/Blue Shield of Tennessee. She subsequently earned a promotion, which required her to transfer to the Nashville Office of the medical insurer. She and her new husband moved to Clarksville, and she began commuting to work in Nashville on a daily basis.

The older child, Amber Renee Layne, was deeply unhappy with her situation in Clarksville, and wished to attend school near her old home. Her maternal grandmother, Kay Green, who resides in Hamilton County, agreed to have her granddaughter move in with her, so she could enroll at Red Bank Middle School. The Hamilton County school system took the position that a court order was needed for Amber Layne to enroll in one of its schools. However, Amber was allowed to enroll in Red Bank Middle School with the understanding that a court order would be forthcoming.

In December of 2001, the mother (now known as Wendy Hastings) filed a Petition to Amend Divorce Decree in the Circuit Court of Marion County. The petition recounted the above facts, and asked the court to grant temporary custody of Amber to Kay Green. Mark Anthony Layne filed an answer in which he stated that he had no objections to granting the maternal grandmother temporary custody of Amber for education purposes.

## II. PROCEEDINGS IN THE TRIAL COURT

A temporary order was prepared and presented in chambers to the Marion County Circuit judge for his signature. The proposed order recited the parties' agreement that Kay Green would have the authority to make educational, parenting and medical decisions while Amber was in her care, but that Amber would continue to reside on weekends with her mother, unless visiting with her father. The father would continue to pay child support, but would pay Ms. Green a pro-rated share to assist her during the weeks Amber was in school. The judge refused to sign the order, apparently because he believed he did not have proper jurisdiction, and the matter was put on the docket for further hearing.

On January 16, 2002, both parents and Ms. Green appeared before the court, along with the child. No transcript was made of that hearing, but a Rule 24 Statement of Evidence[1] was filed. It states that the parents testified that they were not seeking to abrogate or shirk any parental responsibilities or obligations; that while Amber was deeply unhappy with attending school in Clarksville, there were no allegations or proof that she was delinquent, unruly, dependent or neglected; and that the court refused counsel's suggestion that if it had any concerns about Amber's best interest, it should appoint a guardian ad litem and/or advocate for the child.

At the conclusion of the hearing, the court announced that it was without jurisdiction to sign and/or approve such an order, and that it was of the opinion that as a matter of substantive law, such an arrangement was impermissible and improper. On February 15, 2002, the trial court filed the final order in this case. The order stated that it would be appropriate to dismiss the petition on procedural grounds, because of the failure to name Ms. Green as a party to the litigation, but that to save the parties further time and expense, the court would also rule on the merits.

---

[1]The Statement of the Evidence was only signed by Ms. Layne's attorney. However, Rule 24(f) of the Rules of Appellate Procedure states that if the judge does not approve the statement within 30 days after the expiration of the period for filing objections, it "shall be deemed to have been approved and shall be so considered by the appellate court . . . ."

The court recited some of the circumstances discussed above, including the fact that there was no showing that either parent was unfit or incapable of carrying out the duties of parenthood, and no showing that Amber was abused or neglected, but only that she was an "unhappy little girl." The court concluded that on the basis of those circumstances, it was compelled to dismiss the Petition to Amend Divorce Decree for "failing to state a claim upon which relief may be granted as a matter of law." This appeal followed.

### III. THE COURT'S JURISDICTION

We note that the only brief filed in this appeal was that of Wendy Diane Hastings. Her counsel tendered a letter signed by Mark Anthony Layne, stating that he agrees with the position taken by the appellant and that he does not intend to file a brief or to respond further. When an appellee declines to file a brief, we normally decide cases on the record and on the appellant's brief alone. *See* Rule 29(c) Tenn. R. App. P. In this case, however, the appellant requested oral argument, which we granted.

We begin our discussion with the observation that parents have a constitutional right to raise their children as they see fit. *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993); *Illinois v. Stanley*, 405 U.S. 645 (1972). Under most circumstances, courts and other government bodies have absolutely no authority to interfere with the child-raising arrangements chosen by their parents. Thus, if a married couple were to decide that they wished their children to be raised by a trusted grandparent, and the grandparent was agreeable, the courts would have no more power to intervene than it would if the parents decided to send their children to a private boarding school.

When a marriage is dissolved through divorce, however, the determination of which parent is to exercise custody over the children of the marriage becomes a matter for judicial decision. The court thus becomes an additional party to a set of relationships that are otherwise quite private. When ruling on the question of custody, the primary concern of the court must always be the best interest of the child. *Placencia v. Placencia*, 3 S.W.3d 497 (Tenn. Ct. App. 1999); *Varley v. Varley*, 934 S.W.2d 659 (Tenn. Ct. App. 1996); *Bah v. Bah*, 668 S.W.2d 663 (Tenn. Ct. App. 1983).

Until the child reaches the age of majority, questions of custody remain within the exclusive jurisdiction of the trial court in which the action for divorce was brought, and which has rendered a decree respecting the child's care, custody and support. *Kane v. Kane*, 547 S.W.2d 559 (Tenn. 1977). While the award of custody is considered final for purposes of res judicata upon the facts in existence at the time it is rendered, *see Damron v. Damron* 367 S.W.2d 476 (Tenn. 1963), it is also "subject to such changes or modification as the exigencies of the case may require." Tenn. Code Ann. § 36-6-101(a)(1).

In order to promote stability, and to prevent situations where the proper custody of a child could be challenged every time the custodial parent experiences minor difficulties, our courts have declared that they will not order a change of custody unless the party petitioning for such a change can demonstrate that the child's circumstances have materially changed in a way that could not have

been reasonably foreseen at the time of the original custody decision. *Steen v. Steen*, 61 S.W.3d 324 (Tenn. Ct. App. 2001); *Massengale v. Massengale*, 915 S.W.2d 818 (Tenn. Ct. App.1995); *Taylor v. Taylor*, 849 S.W.2d 319 (Tenn. 1993). Once the court is satisfied that such a change of circumstances has been shown, it must make a fresh determination of custody, in light of the best interest of the child.

In this case a lot has happened since the entry of the first custody decree. The mother has remarried, moved twice, and now lives in Clarksville. Her work in Nashville requires a long commute each day. The child, Amber, moved with her mother to Hamilton County and made friends in school. The subsequent move to Clarksville resulted in a dislocation that affected her profoundly.

As we have said, the change in circumstance that allows a modification of a custody decree is one that affects the best interests of the child. *See Massengale v. Massengale*, 915 S.W.2d 818 (Tenn. Ct. App. 1995). But we have also said:

> The determining facts in these . . . custody cases are so infinite in their variety that the reported decision in one case is of little aid or assistance in settling the next. The supreme rule to which all others should yield is the welfare and best interest of the child.

*Holloway v. Bradley*, 230 S.W.2d 1003, 1005 (Tenn. 1950).

We think that the proof shows a material change of circumstances and that the best interests of the child would be served by honoring her parents' decision to commit her custody to her grandmother during the school year.

We do not mean to imply that the trial court is obligated to adopt the parents' view of the best interest of their child, but under the circumstances of this case we think the courts should assist the parents in making a decision that is in fact in the child's best interest. We note that among the factors the court is directed to consider when making a custody determination is "the reasonable preference of the child if twelve (12) years of age or older." Tenn. Code Ann. § 36-6-106 (7).

## IV. A NECESSARY PARTY

A grant of custody, even of temporary custody, is an entrustment which imposes a significant obligation on the recipient. *See Bush v. Bush*, 684 S.W.2d 89 (Tenn. Ct. App. 1984). It thus appears appropriate that the proposed custodian be named as a party to any proceeding involving an award of custody, so that there can be no doubt she is voluntarily placing herself within the jurisdiction and supervision of the court.

Appellant's counsel acknowledges that it would have been better if he had named Ms. Green as a party at the outset. He argues, however that a remedy for his oversight was readily available in the form of an amendment of the pleadings to conform to the evidence, which could relate back to

his original petition. *See* Tenn. R. Civ. P. Rules 15.02 and 15.03. Since we are remanding this case for further proceedings, he will have the opportunity to move the court for such an amendment.

## V.

The order of the trial court is reversed. Remand this cause to the Circuit Court of Marion County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____

BEN H. CANTRELL, PRESIDING JUDGE, M.S.