IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 22, 2010 Session

**ROBERT HENRY ROBINSON, JR. v.
ANN PREVATT ROBINSON IRONS**

**Appeal from the Circuit Court for Monroe County**
**No. 10916     J. Michael Sharp, Judge**

**No. E2010-00249-COA-R3-CV - FILED OCTOBER 7, 2010**

Robert Henry Robinson, Jr. ("Father") and Ann Prevatt Robinson Irons ("Mother") were divorced in 1998. The parties have two minor children. Although they initially had equal co-parenting time, in March of 1999 Mother was designated as the primary residential parent with Father having weekend co-parenting time. In October of 2007, Father was designated as the primary residential parent due to a threat posed by Mother's husband, John Irons, a suspected arsonist. The Trial Court held that this threat constituted a material change in circumstances and that it was in the children's best interest for Father to be primary residential parent. In January of 2010, pursuant to a petition to modify filed by Mother, the Trial Court determined that this threat no longer existed and the absence of the threat constituted a material change in circumstances. The Trial Court then designated Mother as the primary residential parent. Father appeals claiming there was no material change in circumstances. We affirm the Trial Court's finding that there was a material change in circumstances. Because the Trial Court never made a finding as to what was in the children's best interest, we remand this case to the Trial Court for such a determination.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit
Court Affirmed in Part and Vacated in Part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

D. Mitchell Bryant, Athens, Tennessee, for the Appellant, Robert Henry Robinson, Jr.

Shari Tayloe Young, Cleveland, Tennessee, for the Appellee, Ann Prevatt Robinson Irons.

# OPINION

## Background

Father filed for divorce from Mother in January 1998. The parties have two children, a son who will be eighteen years old in November of 2010, and a daughter who currently is fifteen years old. The parties entered into a marital dissolution agreement which provided that they would have joint and equal custody of the minor children. In May of 1998, the Trial Court approved the marital dissolution agreement, and the parties were divorced. An order entered in April of 1999 continued the joint custody arrangement, but set Father's co-parenting time from Thursday at 8:00 a.m. until Sunday at 1:00 p.m. Further changes to Father's co-parenting time occurred in June 1999 after Father moved to Maryland to pursue better employment opportunities. When Father moved, Mother was designated as the primary residential parent with Father's co-parenting time being every other weekend. Father also was granted co-parenting time for four weeks over the summer break and one week over the Christmas break.

The parties' post-divorce relationship has been contentious, and they have filed numerous petitions seeking to modify custody and petitions for contempt over the years. For the sake of brevity, we will discuss only those petitions relevant to this appeal.

On September 26, 2007, Father filed an "Emergency Petition for Modification" seeking primary custody of the two children. According to Father's petition:

> [Mother] is married to John Wesley Irons. There have been problems apparently between Mr. Irons and Ms. Irons over the years.

> Your Petitioner has learned John Wesley Irons has now been indicted for numerous counts of arson in the Federal District Court for the Eastern District of Tennessee at Knoxville in a case styled *United States of America v. John Wesley Irons* # 3:07-cr-95. According to newspaper accounts of Mr. Irons' arrest, Ms. Irons was also involved in said arsons, over the years, at least to the extent she dropped Mr. Irons off at various locations in the Cherokee National Forest and later picked him up after he had set these fires.

> The actions of Ms. Irons, given her history in this case, show she is not a suitable person to continue as primary

-2-

residential custodian of the parties' two (2) minor children, and as such, your Petitioner would request this court modify its previous orders and name him primary residential custodian of both minor children.

Mother opposed Father's petition, and a hearing was conducted in October 2007. Following that hearing, the Trial Court granted the petition and designated Father as the primary residential parent. According to the Trial Court:

> The Court, having reviewed the file and further having heard the sworn testimony of the parties in open Court finds the mother in this cause . . . has shown very poor judgment throughout this case, and the Court had previously expressed concerns regarding her ability to remain as primary residential parent for the minor children.
>
> The Court further finds a dangerous situation has been created by the actions of [Mother] and her relationship with her present husband who is currently in custody pursuant to a Federal Indictment.
>
> The Court further finds though the children would express a preference to remain with the mother, this only further shows they do not recognize the magnitude of potential danger and harm in this case. And the Court finds the safety of the children being paramount that a change of primary residential custodian is necessary . . . .

The children were ages twelve and fourteen when the order was entered on November 2, 2007, changing primary residential custody to Father.

Approximately three months after the above order was entered, Mother filed a petition seeking to change custody. Mother claimed that at times the children were being left without adult supervision, the children's grades were rapidly declining, Father's current wife was a Wiccan, the children witnessed Father's seventeen year-old step-daughter come home drunk, and Father was encouraging the parties' son to make smoke bombs.

Following a hearing on Mother's petition, the Trial Court entered an order on March 31, 2008, stating as follows:

[Mother] must show a material change in circumstance between the date of the hearing and the filing of her petition such as would necessitate a change of primary residential parent.

The Court has reviewed the allegations . . . and finds that there is no creditable proof regarding any Wiccan practices taking place in the Robinson home. The Court further finds that no harm was occasioned by the making or setting off of any smoke bombs, but does find that if said smoke bombs are made or set off in the future that that should be done under direct adult supervision.

The Court further finds that both children are very intelligent, and there is no real reason for the parties' son not to be making good grades. The Court finds that no actions or conduct on the Father's part have caused the son's grades to drop, and that the Father has addressed the situation appropriately. . . .

The Trial Court went on to state that both Father and his wife have addressed situations involving the children and the wife's daughter appropriately. Even though the children again expressed a preference to live with Mother, the Trial Court found that Mother had failed to prove the existence of a material change in circumstances.

On October 26, 2009, Mother filed another petition for modification. In this petition, Mother alleged, among other things, that:

[Petitioner's] estranged Husband, John Irons was arrested for 14 counts of arson on federal property. Petitioner cooperated with Federal authorities as they made their case against John Irons. John Irons was denied bail and has been incarcerated since his arrest in 2007. The trial for John Irons had been postponed several times, but is currently set for trial on November 9, 2009[1]. . . .

Petitioner filed for divorce from John Irons in November 2008, which is currently before this Court. Petitioner and John

---

[1] The parties indicated at oral argument that the criminal trial of John Irons was continued from the November 9, 2009, trial date as well.

Irons announced to the Court on March 2, 2009, that the parties had agreed to terms to resolve the divorce and that [the] parties' attorneys would draft the appropriate documents to present to the Court. Those documents were drafted with Petitioners' signature, but due to John Irons' issues with his criminal attorney, they have not been executed by John Irons at this time. . . .

Petitioner's estranged husband, John Irons, remains in federal custody and is not a threat to Petitioner or her children. . . . [T]he minor children spent the entire summer with Petitioner in Tennessee, and experienced no danger from John Irons.

A hearing was conducted on Mother's petition for modification. At the hearing, both parties and the children testified. The pertinent testimony at the hearing, as set forth in a Tenn. R. App. P. 24(c) statement of the evidence, was as follows[2]:

[Father] testified at the December 1, 2009 hearing in the above-styled matter. . . . [Father] testified the children were doing well in his home academically. The son . . . was involved in band, and his daughter had several friends, with whom she was involved. Father took the daughter to school early each morning, so she could meet with and spend time with her friends. Father testified that both children were loved and cared for in his home. He further testified that he was concerned about the situation involving Mr. John Irons, although he was still in custody. [Mother] had presented documents where Mr. Irons' sanity had been questioned by his criminal counsel. . . .

Mother testified she was not having any contact with Mr. John Irons. She admitted the parties were not yet divorced, but she had been trying to obtain a divorce from Mr. Irons. [Mother] had apparently filed for divorce from Mr. Irons, and

---

[2] We have been provided a Tenn. R. App. P. 24(c) statement of the evidence in lieu of a transcript from the hearing. The statement of the evidence was approved by the Trial Court. Although both parties attached a transcript of the hearing to their briefs, the transcript cannot be considered on appeal because it is not part of the record.

had obtained some type of temporary support, which she was
unable to enforce because of his continued incarceration.

There has previously been some written communication
from [Mother] to Mr. Irons and vice versa, but that had ceased.
[Mother] testified Mr. Irons posed no danger to the children as
he was incarcerated, and both children had expressed a strong
desire to return to the Tellico Plans area. . . .[3]

Both children testified in chambers and "expressed a strong preference to return to Tennessee
and live with Mother."

Following the hearing, an Order was entered in January 2010 resolving
Mother's petition for modification of custody. After discussing various financial issues
which are not pertinent to this appeal, the Trial Court stated:

In regards to [Mother's] Petition for Modification, the
Court finds that a material change in circumstance has occurred
in that the dangerous situation which existed in October 2007
when the Court changed custody from [Father] to [Mother] no
longer exists.

In regards to [Mother's] Petition for Modification, the
children, ages 17 and 14, have expressed their desire to the
Court to return to the custody of their Mother. . . .

Father appeals raising one issue: "Was there a Material Change in
Circumstance such as would justify the Court changing custody of the parties' two minor
children?"

### Discussion

Father claims that the Trial Court erred when it found there had been a material
change in circumstances. Existing custody arrangements are favored since children thrive
in stable environments. *Aaby v. Strange*, 924 S.W.2d 623, 627 (Tenn. 1996); *Hoalcraft v.
Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999). A custody decision, once made and
implemented, is considered *res judicata* upon the facts in existence or those which were

---

[3] We have omitted testimony pertaining solely to the contempt issues surrounding financial matters
which are not at issue on appeal.

reasonably foreseeable when the initial decision was made. *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001). Our Supreme Court, however, has held that a trial court may modify an award of child custody "when both a material change of circumstances has occurred and a change of custody is in the child's best interests." *See Kendrick v. Shoemake*, 90 S.W.3d 566, 568 (Tenn. 2002). According to the *Kendrick* Court:

> As explained in *Blair [v. Badenhope*, 77 S.W.3d 137 (Tenn. 2002)], the "threshold issue" is whether a material change in circumstances has occurred after the initial custody determination. *Id*. at 150. While "[t]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody," the following factors have formed a sound basis for determining whether a material change in circumstances has occurred: the change "has occurred after the entry of the order sought to be modified," the change "is not one that was known or reasonably anticipated when the order was entered," and the change "is one that affects the child's well-being in a meaningful way." *Id*. (citations omitted).

*Kendrick*, 90 S.W.3d at 570. *See also* Tenn Code Ann. § 36-6-101(a)(2)(B)("If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstances. A material change of circumstances does not require a showing of a substantial risk of harm to the child…").

The *Kendrick* Court went on to explain that if a material change in circumstances has been proven, "it must then be determined whether the modification is in the child's best interests . . . according to the factors enumerated in Tennessee Code Annotated section 36-6-106." *Kendrick*, 90 S.W.3d at 570. It necessarily follows that if no material change in circumstances has been proven, the trial court "is not required to make a best interests determination and must deny the request for a change of custody." *Caudill v. Foley*, 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999).

If a material change in circumstances has been proven, undertaking a best interests analysis applying Tenn. Code Ann. § 36-6-106(a) requires a trial court to consider the following:

> (1)  The love, affection and emotional ties existing between the parents or caregivers and child;

(2) The disposition of the parents or caregiver to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment . . . ;

(4) The stability of the family unit of the parents or caregivers;

(5) The mental and physical health of the parents or caregivers;

(6) The home, school and community record of the child;

(7) (A) The reasonable preference of the child if twelve (12) years of age or older;

(B) The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person . . . ;

(9) The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and such person's interactions with the child; and

(10) Each parent or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106(a) (Supp. 2009).

Although we have been provided little factual information, the information that has been provided enables us to conclude that the evidence in the record before us does not preponderate against the Trial Court's finding that there has been a material change in circumstances. Mother testified to the steps she had taken to eradicate Mr. Irons from her and the children's lives. The evidence contained in the record does not preponderate against the Trial Court's finding that the threat once posed by the presence of Mr. Irons has been eliminated by Mother and the federal criminal prosecution of Mr. Irons.

If Mr. Irons' presence or potential for being present was such that it presented a threat to the children which constituted a material change in circumstances in November 2007, it necessarily follows that the removal of that threat also constitutes a material change in circumstances. Accordingly, we conclude that the evidence does not preponderate against the Trial Court's finding that Mother had proven a material change in circumstances.

As set forth previously, if a trial court concludes that there has been a material change in circumstances, the next required step is to ascertain whether a change in custody is in the child's best interest according to the factors set forth in Tenn. Code Ann. § 36-6-106(a). *Kendrick*, 90 S.W.3d at 570. In the present case, the Trial Court never made this determination. The order changing custody from Father to Mother never mentions the best interest of the children or which of the factors in Tenn. Code Ann. § 36-6-106(a) are applicable and impacted the decision.

Because of the dearth of evidence in the record on appeal, we cannot make this determination and we do not believe it is appropriate to assume the Trial Court made such a determination. Therefore, we vacate the Trial Court's judgment transferring primary residential custody to Mother and remand this case to the Trial Court to make an express finding as to the children's best interest consistent with the factors set forth in Tenn. Code Ann. § 36-6-106(a).[4] In the meantime, the children are to remain where they are at the present time pending the Trial Court's determination as to what is in their best interest.

---

[4]We realize that the parties' son will turn eighteen on November 29, 2010, and that these proceedings as to custody will become moot as far as the parties' son is concerned.

## Conclusion

The judgment of the Trial Court is affirmed in part and vacated in part and this cause is remanded to the Circuit Court for Monroe County for further proceedings consistent with this Opinion and for collection of the costs below. Costs on appeal are taxed one-half to the Appellant, Robert Henry Robinson, Jr., and his surety, and one-half to the Appellee, Ann Prevatt Robinson Irons, for which execution may issue, if necessary.

_____
D. MICHAEL SWINEY, JUDGE